## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### BECKLEY DIVISION

| | | |
|---|---|---|
| **BRIAN L. BROWN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 5:12-1178** |
| | ) | |
| **JOEL ZEIGLER, Warden,** | ) | |
| **FCI Beckley,** | ) | |
| | ) | |
| **Defendant.** | ) | |

### PROPOSED FINDINGS AND RECOMMENDATION

Pending is Defendant's Motion to Dismiss or in the Alternative Motion for Summary Judgment and Memorandum in Support. (Document Nos. 14.) Having examined the record and applicable law, the undersigned has determined that Plaintiff failed to exhaust administrative remedies with respect to the claims which he asserts in this matter and respectfully recommends that Defendant's Motion be granted and this matter be dismissed.

### FACTUAL BACKGROUND

On April 17, 2012, Plaintiff, then an inmate in the Special Housing Unit [SHU] at FCI Beckley, filed an Application to Proceed Without Prepayment of Fees and Costs and an Application Under 28 U.S.C. § 2241 for Writ of *Habeas Corpus* by a Person in State or Federal Custody. (Document Nos. 1 and 2.) Plaintiff alleges in his Section 2241 Application (Document No. 2.) that his confinement in SHU violates his right to due process and constitutes cruel and unusual punishment in violation of his constitutional rights. (Id., pp. 6 - 7.) Plaintiff explains that he has been "forced to house in SHU for the last 1090 to 2920 days" and his placement has not been reviewed consistent with 28 C.F.R. § 541.23 (Id., p. 7.) Plaintiff states that he has been placed in SHU "since

2004 to 2008, and 2009 to 2012" because the BOP "sends Brown to prisons that are not safe." (Id.) Plaintiff contends that his placement in SHU results in an atypical or significant hardship. (Id.) Finally, Plaintiff alleges that Defendant is currently "attempting to send Brown back to a prison [USP Hazleton] where a verified threat was made." (Id.) If transferred, Plaintiff alleges that his personal safety will be jeopardized and he will again be placed in SHU. (Id.) For relief, Plaintiff requests that the Court "Grant Writ of Habeas Corpus Writ of Assistance, or Temporary Restraining Order, Grant stay to exhaust administrative remedies, to gather facts in case, then grant Writ of Habeas Corpus, to mandate BOP follow Regulations and stop the atypical and significant housing in SHU when other (safe) prisons are available. Grant liberty restricted to Federal Regulations as published. Allowing timely remedies." (Id., p. 9.)[1]

Plaintiff also filed a Motion for Emergency Preliminary Injunction on April 17, 2012. (Document No. 3.) Plaintiff states that on January 10, 2012, he was transferred to USP Hazelton. Plaintiff claims that upon his arrival there, prison officials verified that Plaintiff was subject to a threat of harm by inmates and prison officials and place him in SHU under protective custody. (Id., pp. 2 - 3.) Plaintiff states that due to conditions in the USP Hazelton SHU, he was transferred from USP Hazelton where he was in SHU to FCI Beckley's SHU on February 29, 2012. (Id., p. 4.) Plaintiff claims that he learned on April 11, 2012, that he would be transferred back to Hazelton "where he is under imminent danger of serious bodily harm." (Id.) Plaintiff further claims that prison officials have denied him supplies (paper and pen) and access to administrative remedies. (Id.)

---

[1] The undersigned notes that Plaintiff indicated in his Application Under 28 U.S.C. § 2241 for Writ of *Habeas Corpus* and elsewhere that he filed an administrative "grievance" on December 13, 2011, claiming, among other things, "denial of prison placement, sending to verified danger[ous] prison, failure to follow regulations, . . . personal retaliation decision . . . ." Document No. 2, p. 3. *See also* Document No. 10, p. 2.

Plaintiff requests that the Court (1) enjoin Defendant and those under his supervision from refusing him access to administrative remedies; (2) require Defendant to provide him with supplies to process his administrative claims; and (3) enjoin Defendant from transferring him back to USP Hazelton until he has exhausted administrative remedies. (Id., p. 5.)

On April 18, 2012, the undersigned filed an Order Granting Application to Proceed Without Prepayment of Fees. (Document No. 5.) The undersigned construed Plaintiff's Application Under 28 U.S.C. § 2241 for Writ of *Habeas Corpus* by a Person in State or Federal Custody as a Complaint claiming entitlement to relief pursuant to Bivens v. Six Unknown Federal Agents of Federal Bureau of Narcotics, 403 U.S. 388, 91 S.Ct. 1999, 24 L.Ed.2d 619(1971), and determined that Plaintiff potentially states claims under the Eighth and Fifth Amendments of the United States Constitution in alleging that his personal safety will be placed in jeopardy when he is returned to USP Hazelton and he has been held for a long period of time in SHU.

On April 30, 2012, Plaintiff filed a Motion to Reconsider Doc. 8 Order. (Document No. 10.)[2] Plaintiff requests that the Court consider his claims under Section 2241 and not under Bivens. Plaintiff claims that he is seeking relief in *habeas corpus* for Defendant's "imposition of segregated confinement without elementary due process and without just cause." (Id., pp. 3 and 7.) Plaintiff contends that his long term confinement in SHU constitutes an atypical and significant hardship in violation of the United States Constitution and BOP regulations. (Id., pp. 3 and 10.) Plaintiff states that he has experienced a decline in his mental and physical state as a result of his prolonged confinement in SHU. (Id., p. 10.) Plaintiff further alleges that his safety will he jeopardized by his

---

[2] Plaintiff clearly intended to request that the Court reconsider its determination in its Order Granting Application to Proceed Without Prepayment of Fees (Document No. 5.).

return to USP Hazelton where he is subject to threats. (Id., pp. 8, 9 and 10.) He urges that the BOP has prisons elsewhere where he can be confined without being held in SHU. (Id., pp. 7 and 10.)[3]

On June 13, 2012, Defendant filed a Motion to Dismiss or in the Alternative Motion for Summary Judgment and Memorandum in Support. (Document Nos. 14 and 15.) Defendant attached as Exhibits to his Motion to Dismiss (1) the Declaration of Sharon Wahl, Paralegal for the Beckley Consolidated Legal Center at FCI Beckley; (2) Defendant's Declaration; and (3) a copy of the Fourth Circuit's unpublished decision in Howard v. Federal Bureau of Prisons, 198 F.3d 236, 1999 WL 798883 (C.A.4(W.Va.)), and Northern District Judge Stamp's decision affirming and adopting Magistrate Judge Seibert's recommendation in Petway v. Lappin, 2008 WL 629998 (N.D.W.Va.). Defendant contends that (1) Plaintiff failed to exhaust administrative remedies; (2) Defendant cannot be sued in his official capacity; (3) Plaintiff makes no special claim against Defendant; (4) Plaintiff's due process claim fails because he has no liberty interest in avoiding confinement in administrative segregation; (5) conditions in SHU do not constitute an atypical and significant hardship in violation of Plaintiff's Eighth Amendment rights; (6) without physical injury, Plaintiff cannot recover for emotional or psychological damages; and (7) Defendant is entitled to qualified immunity. Defendant cites the Declaration of Sharon Wahl in claiming that Plaintiff failed to exhaust administrative remedies. Ms. Wahl states in her Declaration that Plaintiff was convicted and sentenced to life in

---

[3] Plaintiff initiated proceedings under Section 2241 in the United States District Court for the Northern District of West Virginia in February, 2012, when he was incarcerated at USP Hazelton. Brown v. O'Brien, Civil Action No. 2:12cv9, and Brown v. O'Brien, Civil Action No. 1:12cv32. Plaintiff contended, among other things, as he does in this matter that his prolonged confinement in SHU constituted an atypical and significant hardship and prison officials prevented him from submitting documents. The Court found that Plaintiff stated claims respecting the conditions of his confinement and violations of his civil rights properly considered under Bivens. A copy of a couple of documents from the Northern District proceedings is of record at Document No. 44, pp. 59 - 67.

prison in June, 2002. She states further relying upon information in the Bureau of Prisons' SENTRY

computer database, as follows:

6.   Plaintiff was designated by the Bureau of Prisons to serve his sentence at USP Leavenworth, where he moved in and out of administrative detention until he was transferred in 2004, according to SENTRY records.

7.   Since that time, plaintiff has been transferred to more than 14 BOP institutions, and has been housed in SHU during the majority of his incarceration, under administrative detention.

8.   According to SENTRY records, Plaintiff has spent some time in disciplinary segregation, and has also spent some intermittent periods of time housed in general population.

9.   On some occasions, Plaintiff has been in general population for periods of approximately four and six months at a time.

10.  The nature of Plaintiff's convictions makes him susceptible to threats and assaults by other inmates.

11.  Upon his arrival at FCI Beckley on February 29, 2012, Plaintiff was placed in administrative detention in the Special Housing Unit as a 'trans seg,' meaning transfer for segregation.

12.  Plaintiff's SENTRY records show that he filed an administrative remedy request on April 9, 2012, regarding supplies, such as paper, pen, and envelopes. The remedy has not yet been answered.

13.  Additionally, he has filed four other remedy requests at FCI Beckley regarding different issues.

14.  One of those remedies, Remedy ID 689542-F1, filed on May 23, 2012, deals with his cell assignment in SHU, but was rejected as being untimely.

Ms. Wahl attached a copy of records from the BOP's SENTRY computer database from April 9 to

June 6, 2012, to her Declaration indicating Plaintiff's administrative remedy activity

By Order filed on June 14, 2012, the Court notified Plaintiff pursuant to <u>Roseboro v.</u>

<u>Garrison</u>, 528 F.2d 304 (4th Cir. 1975), that Plaintiff had the right to file a response to Defendant's

Motion to Dismiss or in the alternative for Summary Judgment and submit Affidavit(s) or statements and/or other legal or factual material supporting his claims as they are challenged by Defendant in moving to dismiss of for summary judgment. (Document No. 16.)

On June 20, 2012, Plaintiff filed a Petition for Writ of Habeas Corpus – Aid in Execution of this Court's Orders. (Document No. 17.) Plaintiff complains that he did not receive Defendant's Motion to Dismiss or in the Alternative Motion for Summary Judgment and Memorandum in Support (Document Nos. 14 and 15). Plaintiff further complains that prison staff was not providing copies of legal documents or postage for mailing them to this Court and the Northern District Court. Plaintiff requests that the Court (1) order Defendant's counsel to send him a copy of Document Nos. 14 and 15; (2) require Defendant to provide, pen, paper and postage for his legal documents or alternatively bring him to Court so that he can file them; and (3) prohibit Defendant from blocking his access to the Court.

On June 26, 2012, Plaintiff filed a letter dated June 25, 2012 (Document No. 19.), indicating that he had not been served Document Nos. 14 and 15 and legal documents which he wanted to file were seized and reiterating the circumstances and requests set forth in his Petition for Writ of Habeas Corpus (Document No. 17.).

On July 5, 2012, Plaintiff filed an Emergency Motion for Writ of Prohibition – Aid in Execution of Court Order complaining as he did in Document Nos 17 and 19 that documents which he intended to file in this proceeding had been confiscated and reporting that Defendant had transferred him back to USP Hazelton "knowing imminent danger existed." (Document No. 25.) Plaintiff requests that the Court prohibit Defendant from interfering with his right of access to the Court and order his immediate transfer.

6

On July 16, 2012, Plaintiff filed a Notice of Another Address Change and Motion for Extension of Time. (Document No. 30.) Plaintiff advised that he was transferred from FCI Beckley to USP Hazelton on June 25, 2012, and, reiterating that Defendant interfered with his access to the Court and stating that Defendant prevented his exhaustion of administrative remedies, requested a sixty day extension of time in these proceedings so that he could obtain Court documents which were confiscated and withheld from him.

By Order filed on July 17, 2012, the Court granted Plaintiff's request for an extension of time to file his response to Defendant's Motion to Dismiss or for Summary Judgment allowing him until September 17, 2012, to do so. (Document No. 31.)

On July 23, 2012, Plaintiff filed a letter the Clerk requesting that Defendant be compelled to produce documents and a Subpoena duces tecum. (Document No. 33.)

On September 4, 2012, Plaintiff filed an Emergency Request for Adjudication of Pleadings. (Document No. 35.)

On September 17, 2012, Plaintiff filed a Motion for Extension of Time requesting that he be allowed until October 22, 2012, to file his response to Defendant's Motion to Dismiss or for Summary Judgment. (Document No. 36.)

On September 26, 2012, Plaintiff filed a Motion for Hearing with respect to his Petitions for Writs of Habeas Corpus and Prohibition and Motion for Extension of Time. (Document No. 38.) Plaintiff states that when he has submitted documents to be copied or for mailing to the Court, prison staff at USP Hazelton lost them thereby preventing his access to the Court. Plaintiff again requests that the Court order that he be brought to the Court for a hearing so that he may produce his legal documents and that prison staff stop interfering with his access to the Court.

On October 26, 2012, Plaintiff filed his Response to Defendant's Motion to Dismiss or in the alternative for Summary Judgment. (Document No. 39.) Plaintiff requests that the Court consider his claims in this matter under 28 U.S.C. § 2241 and not <u>Bivens</u> and contends that, if the Court considers this matter under Section 2241, Defendant's Motion to Dismiss should be denied because it is based upon <u>Bivens</u>. Plaintiff then responds to Defendant's assertions as set forth in his Motion to Dismiss or in the Alternative for Summary Judgment that (1) he exhausted administrative remedies as evidenced in documents which he submitted; (2) Defendant can be sued in his official capacity under Section 2241, but if the case is considered under <u>Bivens</u>, Defendant and others "will be sued in individual capacity."; (3) he has made a specific complaint against Defendant under Section 2241 and if the case is considered under <u>Bivens</u>, his Amended Complaint indicates Defendant's involvement; (4) he is claiming that his long-term solitary confinement violates his constitutional rights; and (5) Defendant is not entitled to qualified immunity because his actions were clearly proscribed. Plaintiff indicates that he agrees that if BOP regulations pertaining to such confinement are followed, there is no Eighth Amendment violation and he cannot recover for psychological harm without showing personal injury as a consequence of Defendant's actions. Plaintiff appears to assert, however, that the regulations have not been followed in keeping him in solitary confinement for an excessive period of time which has caused him physical and psychological harm such that his rights to due process and not to be subjected to cruel and unusual punishment have been violated. Plaintiff asserts that violations of his rights continued including his right of access to the Courts.

Plaintiff filed two additional documents on October 26, 2012: (1) an Amended Motion for Production of Documents by Direction of Subpoena Duces Tecum (Document No. 40.) and (2) his

Second Motion to Reconsider Doc. 5/or Request for Permission for Leave to File an Amended Complaint. (Document No. 41.) Plaintiff reiterates his request that the Court consider his claims in this matter under 28 U.S.C. § 2241 and not <u>Bivens</u> and contends that, if the Court considers this matter under Section 2241, Defendant's Motion to Dismiss should be denied because it is based upon <u>Bivens</u>.

On October 31, 2012, Defendant filed his Reply to Plaintiff's Response to Defendant's Motion to Dismiss or in the alternative for Summary Judgment. (Document No. 42.) Defendant states that Plaintiff "provides no factual support to challenge the exhaustion information in the Declaration of Sharon Wahl, which is fatal to his complaint and request to amend his complaint. An amended complaint will not cure his failure to exhaust his administrative remedies."

On November 9, 2012, Plaintiff filed Exhibits apparently intending them to be in support of his positions taken in opposition to Defendant's Motion to Dismiss. (Document No. 44.) The exhibits are a copy of (1) Plaintiff's Inmate Skills Development Plan indicating, among other things, the prisons where he had been held between March, 2002, and July 2012, and his designations as an inmate at each of them; (2) a blank FCI Beckley Informal Resolution Form; (3) copies of documents pertaining to Plaintiff's administrative complaints at FCI Beckley; (4) an inventory of Plaintiff's personal property which appears to be dated June 21, 2012; (5) the Declaration of the Defendant submitted in this matter in support of Defendant's Motion to Dismiss; (6) BOP regulations pertaining to the conditions of disciplinary segregation; (7) the BOPs Policy Statement P5100.08 indicating, among other things, how the Custody Classification is determined for long term detainees; (8) a Custody Classification Form indicating how Plaintiff's custody classification was determined; (9)  Request for Transfer/Application of Management Variable Forms (a) dated

November 8, 2004, when Plaintiff was at USP Leavenworth referring Plaintiff for transfer based upon his disciplinary history and an attack upon him by other inmates which resulted in serious injuries and (b) indicating that in March, 2007, Plaintiff requested transfer to the Special Housing Unit for his own protection at FCC Coleman; (10) a July 10, 2012, letter to Plaintiff from the Clerk of the Fourth Circuit Court of Appeals indicating dismissal of an appeal which Plaintiff had initiated; (11) an April 4, 2012, letter from the Clerk of the Eighth Circuit Court of Appeals which appears to have included a dispositive order of that Court; (12) the June 13, 2012, Report and Recommendation of United States Magistrate Judge Kaull in the Northern District of West Virginia recommending dismissal of Plaintiff's Section 2241 Petition; and (13) an Order Dismissing Case of Northern District Judge Bailey dismissing a case which Plaintiff initiated and was considered under Bivens.

## THE STANDARD

### Motion to Dismiss Under Rule 12(b)(6).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do. Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." Bell Atlantic Corporation v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 1959, 167 L.Ed.2d 929 (2007)(reference to Conley v. Gibson, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), omitted.) Dismissal is proper under Rule 12(b)(6) where, construing the allegations of the Complaint in a light most favorable to the Plaintiff and assuming the alleged facts to be true, it is clear as a matter of law that no relief could be granted

under any set of facts which could be proven consistent with the allegations. Deference is given to *pro se* Complaints. *See* <u>Gordon v. Leeke</u>, 574 F.2d 1147, 1153 (4th Cir. 1978)(A District Court should allow *pro se* plaintiffs reasonable opportunity to develop pleadings.); <u>Coleman v. Peyton</u>, 340 F.2d 603, 604 (4th Cir. 1965)(*Pro se* plaintiff should be given an opportunity to particularize potentially viable claims.). A *pro se* Complaint may therefore be dismissed for failure to state a claim only if it appears "'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" <u>Haines v. Kerner</u>, 404 U.S. 519, 521, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972), *quoting* <u>Conley v. Gibson</u>, 355 U.S. 41, 45 - 46 (1957). Where a *pro se* Complaint can be remedied by an amendment, however, the District Court may not dismiss the Complaint with prejudice, but must permit the amendment. <u>Denton v. Hernandez</u>, 504 U.S. 25, 34, 112 S.Ct. 1728, 1734, 118 L.Ed.2d  340 (1992).

### **Summary Judgment.**

Summary judgment is appropriate under Federal Rule of Civil Procedure 56 when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Once the moving party demonstrates the lack of evidence to support the non-moving party's claims, the non-moving party must go beyond the pleadings and make a sufficient showing of facts presenting a genuine issue for trial. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 - 87, 106 S.Ct.1348, 89 L.Ed.2d 538 (1986). All inferences must be drawn from the underlying facts in the light most favorable to the non-moving party. <u>Matsushita</u>, 475 U.S. at 587, 106 S.Ct. at 1356. Summary judgment is required when a party fails to make a showing sufficient to establish an essential element of a claim, even if there are genuine factual issues proving other elements of the

claim. <u>Celotex</u>, 477 U.S. at 322-23, 106 S.Ct. at 2552-53. Generally speaking, therefore, summary judgment will be granted unless a reasonable jury could return a verdict for the non-moving party on the evidence presented. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If no facts or inferences which can be drawn from the circumstances will support Plaintiff's claims, summary judgment is appropriate.

## DISCUSSION

### Section 2241 or Bivens.

Plaintiff is clearly contending that he has suffered, and Defendant has perpetuated, a continuing violation of his constitutional rights as he has been held in SHU for most of the term of his incarceration and has been transferred back to USP Hazelton where he is subject to a risk of physical harm. Plaintiff further contends that Defendant has denied him his constitutional right of access to the Courts by withholding services and supplies for preparing legal documents and mailing them to the Courts. Plaintiff's claims are not cognizable under Section 2241. Claims pertaining to manner in which a sentence is executed most often involving the fact or duration of confinement are considered under Section 2241. A <u>Bivens</u> action on the other hand is a judicially created damages remedy which is designed to vindicate violations of constitutional rights by federal actors. <u>See</u> <u>Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics</u>, 403 U.S. at 395-97, 91 S.Ct. at 2004-05; <u>See also</u> <u>Carlson v. Green</u>, 446 U.S. 14, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980)(extending <u>Bivens</u> to Eighth Amendment claims); <u>Davis v. Passman</u>, 442 U.S. 228, 239 n. 18, 99 S.Ct. 2264, 2274 n. 18, 60 L.Ed.2d 846 (1979)(extending <u>Bivens</u> to allow citizen's recovery of damages resulting from a federal agent's violation of the Due Process Clause of the Fifth Amendment.) A <u>Bivens</u> action is the federal counterpart of an action under 42 U.S.C. § 1983. A plaintiff asserting

a claim under <u>Bivens</u> must show the violation of a valid constitutional right by a person acting under color of federal law. Thus, a plaintiff may bring an action for money damages against federal agents acting under the color of their authority for injuries caused by their unconstitutional conduct. The allegation and proof of an actual injury and causation between the officials' conduct and the alleged injury is necessary for there to be liability. <u>Cochran v. Morris</u>, 73 F.3d 1310, 1317 (4th Cir. 1996)("A prisoner must also identify an actual injury resulting from official conduct. <u>Strickler v. Waters</u>, 989 F.2d 1375, 1382 - 85 (4th Cir.), <u>cert. denied</u>, 510 U.S. 949, 114 S.Ct. 393, 126 L.Ed.2d 341 (1993) A showing of injury is required in order to avoid trivial claims of deprivation."); <u>White v. Gregory</u>, 1 F.3d 267, 269 (4th Cir. 1991)("In <u>Strickler</u>, we held that a prisoner must suffer 'serious or significant physical or mental injury' in order to be 'subjected to cruel and unusual punishment within the meaning of the Eighth Amendment.") Thus, an inmate may name a federal officer in an individual capacity as a defendant in alleging a constitutional violation pursuant to <u>Bivens</u>. <u>See</u> <u>Wilson v. Seiter</u>, 501 U.S. 294, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991). However, <u>Bivens</u> claims are not actionable against the United States, federal agencies, or public officials acting in their official capacities. <u>See</u> <u>FDIC v. Meyer</u>, 510 U.S. 471, 475, 484-86, 114 S.Ct. 996, 127 L.Ed. 2d 308 (1994); <u>Berger v. Pierce</u>, 933 F.2d 393, 397 (6th Cir. 1991); <u>Reinbold v. Evers</u>, 187 F.3d 348, 355 n. 7 (4th Cir. 1999). Furthermore generally, "Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*. * * * Because vicarious liability is inapplicable to <u>Bivens</u> . . ., a plaintiff must plead that each Government-official defendant, through the officials own individual actions, has violated the Constitution." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 676, 129 S.Ct. 1937, 1948, 173 L.Ed.2d 868 (2009); <u>see also</u> <u>Trulock v. Freeh</u>, 275 F.3d 391, 402 (4th Cir. 2001), <u>cert. denied</u>, 537 U.S. 1045 , 123 S.Ct. 621, 154 L.Ed.2d 517

13

(2002)("In a Bivens suit there is no *respondeat superior* liability. * * * Instead, liability is personal, based upon each defendant's own constitutional violations." (Citation omitted.)). Plaintiff's allegations which arise out of the conditions of his confinement amount to claims under Bivens.

**Exhaustion of Administrative Remedies.**

The Prison Litigation Reform Act, 42 U.S.C. § 1997e(a)(1996), requires that inmates exhaust available administrative remedies prior to filing civil actions though the administrative process may not afford them the relief they might obtain through civil proceedings.[4] Woodford v. Ngo, 548 U.S. 81, 126 S.Ct. 2378, 2382-83, 165 L.Ed.2d 368 (2006); Porter v. Nussle, 534 U.S. 516, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002)(The Prison Litigation Reform Act's exhaustion requirement applies to all inmate suits about prison life whether they involve general circumstances or particular episodes and whether they allege excessive force or some other wrong.); Booth v. Churner, 532 U.S. 731, 121 S.Ct. 1819, 1820,149 L.Ed.2d 958 (2001)("Under 42 U.S.C. § 1997e(a), an inmate seeking only money damages must complete any prison administrative process capable of addressing the inmate's complaint and providing some form of relief, even if the process does not make specific provision for monetary relief."). Exhaustion of administrative remedies is also required when injunctive relief is requested. Goist v. U.S. Bureau of Prisons, 2002 WL 32079467, *4, fn.1 (D.S.C. Sep 25, 2002), aff'd, 54 Fed.Appx. 159 (4th Cir. 2003), cert. denied, 538 U.S. 1047, 123 S.Ct. 2111, 155 L.Ed.2d 1088 (2003). "[T]here is no futility exception to the PLRA's exhaustion requirement." Massey v. Helman, 196 F.3d 727, 733 (7th Cir. 1999). But the plain language of the statute requires that only

---

[4] 42 U.S.C. § 1997e(a) provides as follows:

No action shall be brought with respect to prison conditions under section 1983 of this title or any other federal law, by a prisoner confined in any jail, prison, or other correction facility until such administrative remedies as are available are exhausted.

14

"available" administrative remedies be exhausted. A grievance procedure is not "available" if prison officials prevent an inmate from using it. Dale v. Lappin, 376 F.3d 652, 656 (7th Cir. 2004); Mitchell v. Horn, 318 F.3d 523, 529 (3d Cir. 2003)(inmate lacked available administrative remedies for exhaustion purposes where inmate was unable to file a grievance because prison officials refused to provide him with the necessary grievance forms); Miller v. Norris, 247 F.3d 736, 740 (8th Cir. 2001)(allegations that prison officials failed to respond to his written requests for grievance forms were sufficient to raise an inference that inmate had exhausted his available administrative remedies.)

If an inmate exhausts administrative remedies with respect to some, but not all, of the claims he raises in a Section 1983, Bivens or FTCA action, the Court must dismiss the unexhausted claims and proceed with the exhausted ones. See Jones v. Bock, 549 U.S. 199, 127 S.Ct. 910, 913, 166 L.Ed.2d 798 (2007)("The PLRA does not require dismissal of the entire complaint when a prisoner has failed to exhaust some, but not all, of the claims included in the complaint. * * * If a complaint contains both good and bad claims, the court proceeds with the good and leaves the bad.") It appears to be the majority view as well that exhausting administrative remedies after a Complaint is filed will not save a case from dismissal. See Neal v. Goord, 267 F.3d 116, 121-22 (2d Cir. 2001)(*overruled on other grounds*), a Section 1983 action, citing numerous cases. The rationale is pragmatic. As the Court stated in Neal, allowing prisoner suits to proceed, so long as the inmate eventually fulfills the exhaustion requirement, undermines Congress' directive to pursue administrative remedies prior to filing a complaint in federal court. Moreover, if during the pendency of a suit, the administrative process were to produce results benefitting plaintiff, the federal court would have wasted its resources adjudicating claims that could have been resolved

within the prison grievance system at the outset. Neal, 267 F.3d at 123. In Freeman v. Francis, 196 F.3d 641, 645 (6th Cir. 1999), the Court stated: "The plain language of the statute [§ 1997e(a)] makes exhaustion a precondition to filing an action in federal Court.. . .The prisoner, therefore, may not exhaust administrative remedies during the pendency of the federal suit." Thus, the PLRA requires that available administrative remedies must be exhausted before the filing of a suit in Federal Court. It is further clear that the PLRA does not require that an inmate allege or demonstrate that he has exhausted his administrative remedies. See Jones v. Bock, supra; Anderson v. XYZ Correctional Health Services, 407 F.3d 674, 677 (4th Cir. 2005). Failure to exhaust administrative remedies is an affirmative defense. Prison officials have the burden of proving that the inmate had available remedies which he did not exhaust. See Dale v. Lappin, 376 F.3d 652, 655 (7th Cir. 2004)("Although exhaustion of administrative remedies is a precondition to a federal prisoner filing a Bivens suit, [citations omitted] failure to exhaust is an affirmative defense that the defendants have the burden of pleading and proving." (Citations omitted)) The Court is not precluded, however, from considering at the outset whether an inmate has exhausted administrative remedies. The Fourth Circuit stated in Anderson, 470 F.3d at 683, as follows:

> [A]n inmate's failure to exhaust administrative remedies is an affirmative defense to be pleaded and proven by the defendant. That exhaustion is an affirmative defense, however, does not preclude the district court from dismissing a complaint where the failure to exhaust is apparent from the face of the complaint, nor does it preclude the district court from inquiring on its own motion into whether the inmate exhausted all administrative remedies.

For Bivens purposes, proper exhaustion of available administrative remedies requires that "a prisoner must submit inmate complaints and appeals in the place, and at the time, the prison's administrative rules require." Dale v. Lappin, 376 F.3d at 655 (internal citations omitted); also see Woodford v. Ngo, 548 U.S. 81, 126 S.Ct. 2378, 2382, 165 L.Ed.2d 368 (2006)(stating that "[p]roper

exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings"). The Federal Bureau of Prisons [BOP] has established an Administrative Remedy Program, 28 C.F.R. § 542.10, *et seq.*, through which an inmate may seek formal review of issues or complaints relating to confinement. Depending upon at what level an inmate initiates it, the BOP's Administrative Remedy Program is a three-step or four-step grievance procedure. As a general matter, a federal inmate is required first to attempt to resolve his complaints informally by the submission of an "Inmate Request to Staff Member" form. 28 C.F.R. § 542.13. The inmate's request may be rejected if improper, and the inmate will then be advised of the proper administrative procedure. Id. Within 20 days after the circumstances occurred which are the subject of the inmate's complaints, the inmate must complete this first step and submit a formal "Administrative Remedy Request" on a BP-9 form to an institution staff member designated to receive such Requests, 28 C.F.R. § 542.14(a) and (c)(4), or under exceptional circumstances to the appropriate Regional Director. Id., § 542.14(d). The Warden of the institution and the Regional Director must respond to the inmate's Request within 20 and 30 days respectively. Id., § 542.18. If the inmate's Request was directed to the Warden of the institution and the Warden's response is unfavorable, the inmate may appeal within 20 days to the Regional Director on a BP-10. Id., § 542.15(a) and (b). If the Regional Director's response is unfavorable, the inmate may appeal to General Counsel on a BP-11 form within 30 days after the Regional Director signed the response. Id., § 542.15(a). General Counsel has 40 days to respond to the inmate's appeal. Id., § 542.18. The administrative process is exhausted when General Counsel issues a ruling on the inmate's final appeal. Id., § 542.15(a). The entire process takes about 120 days to complete. An inmate's

submission may be rejected at any level for failure to comply with the administrative remedy requirements or if the submission is written in an obscene or abusive manner. Id., § 542.17(a). The inmate will be provided with notice of any defect and whether the defect is correctable. Id., § 542.17(b). If a request or appeal is rejected and the inmate is not given an opportunity to correct the defect and resubmit, the inmate may appeal the rejection to the next appeal level. Id., § 542.17(c).

Having examined the Declaration of Sharon Wahl attached as an Exhibit to Defendant's Motion to Dismiss or in the Alternative for Summary Judgment (Document No. 14- 1.) and Plaintiff's Exhibits which include documents pertaining to his administrative remedy complaints (Document No. 44, Exhibit 3.), the undersigned finds that Plaintiff failed to exhaust administrative remedies with respect to his claims herein. Plaintiff's documents indicate that Plaintiff submitted Administrate Remedy Forms as follows: (1) an Administrative Remedy Appeal to the BOP's Central Office which was received on December 13, 2011, respecting a decision respecting his custody classification and placement in the Special Housing Unit at USP Hazelton for a year.[5] Plaintiff complained that the BOP "continues to keep Brown in SHU indefinitely causing injury." By rejection Notice dated January 5, 2012, Plaintiff's appeal was rejected apparently because Plaintiff

---

[5] It is well settled that inmates have "no legitimate statutory or constitutional entitlement" to any particular custodial classification which is sufficient to invoke due process. *Moody v. Doggett*, 429 U.S. 78, 88 n.9, 97 S.Ct. 274, 279 n.9, 50 L.Ed.2d 236(1976). Thus, inmates do not have a property or liberty interest in custodial classifications. Such classifications are generally within the broad discretion of prison officials' administration and management, and Courts are reluctant to interfere except in extreme circumstances such as when the classification results in the deprivation of a constitutional right. Likewise, inmates have no constitutional right to be incarcerated in any particular institution, and prison officials have discretion in deciding to transfer them to which the Courts defer. *Meachum v. Fano*, 427 U.S. 215, 228, 96 S.Ct. 2532, 2540, 49 L.Ed.2d 451 (1976)("Whatever expectation the prisoner may have in remaining at a particular prison so long as he behaves himself, it is too ephemeral and insubstantial to trigger procedural due process protections as long as prison officials have discretion to transfer him for whatever reason or for no reason at all.")

had not first presented his complaint to the Warden's Office; (2) a Request for Informal Resolution on March 28, 2012, complaining that Unit Staff were intentionally blocking access to the Courts by refusing supplies for legal work.[6] Resolution of Plaintiff's complaint was not accomplished; (3) a Request for Administrative Remedy dated March 30, 2012, which Defendant's office received on April 9, 2012. Plaintiff complained that "[t]he Unit Staff . . . refused to allow any paper or envelopes necessary for compliance to active Court cases which has caused several missed deadlines, this causing actual injury." Plaintiff's Request was designated  BEC-683223-F1. Defendant's office inquired respecting Plaintiff's complaint and responded on July 3, 2012, that Plaintiff's Unit Team and Staff had provided Plaintiff writing paper, a pen, envelopes and postage; (3) a Request for Administrative Remedy dated April 6, 2012, complaining as he had to the Central Office in December, 2011, about his custody classification and placement in the Special Housing Unit. It appears that Defendant's Office received Plaintiff's Request on May 23, 2012, designated it 689523-F1 and rejected it that same day; (4) a Request for Informal Resolution on April 26, 2012, complaining that Unit Staff were withholding postage for Plaintiff's communications with his family. Resolution of Plaintiff's complaint was not accomplished. Documents attached to the Declaration of Sharon Wahl indicate Plaintiff's administrative remedy activity between April 9,

---

[6] An inmate's complaint alleging deprivation of the right of access to the Courts must contain specific allegations respecting the conduct of prison officials which resulted in the deprivation and an injury which the inmate actually sustained. *See O'Dell v. Netherland*, 112 F.3d 773, 776 (4th Cir. 1997)("Ultimately, a prisoner wishing to establish an unconstitutional burden on his right of access to the courts must show 'actual injury' to the capability of bringing contemplated challenges to sentences or conditions of confinement to the courts.'" *quoting Lewis v. Casey*, 518 U.S. 343, 355, 116 S.Ct. 2174, 2182, 135 L.Ed.2d 606 (1996)); *Cochran v. Morris*, 73 F.3d 1310, 1317 (4th Cir. 1996). Assuming that Plaintiff had difficulty obtaining supplies and postage for preparing and mailing legal documents in this matter as he alleges, Plaintiff has not alleged any actual injury nor is one evident from the record. Plaintiff has been able to submit numerous documents for filing in this action.

2012, and June 6, 2012. It is not evident from Plaintiff's Exhibits or Sharon Wahl's Declaration that Plaintiff processed any administrative claim through the Office of the General Counsel. The undersigned further finds from the documents which Plaintiff has submitted as Exhibits (Document No. 44.) evidencing his administrative complaints that the administrative process was available to him but Plaintiff failed to complete the process with respect to any of his claims in this matter. It therefore is evident that Plaintiff has failed to exhaust available administrative remedies with respect to his claims in this matter. Based on the foregoing, the undersigned recommends that Plaintiff's Complaint be dismissed in view of his failure to exhaust the administrative remedies provided under the BOP's Administrative Remedy Program, 28 C.F.R. § 542.10, *et seq.*, prior to filing his Complaint.

## PROPOSAL AND RECOMMENDATION

The undersigned therefore respectfully **PROPOSES** that the District Court confirm and accept the foregoing findings and **RECOMMENDS** that the District Court **GRANT** the Defendant's Motion to Dismiss or in the Alternative Motion for Summary Judgment (Document Nos. 14.), **DISMISS** this matter and **REMOVE** it from the District Court's docket.

The parties are hereby notified that this "Proposed Findings and Recommendation" is hereby **FILED**, and a copy will be submitted to the Honorable United States District Judge Irene C. Berger. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rule 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have seventeen (17) days (fourteen days, filing of objections and three days, mailing/service) from the date of filing of this Findings and Recommendation within which to file with the Clerk of this Court specific written objections identifying the portions of the Findings and Recommendation to which objection is made and the

basis of such objection. Extension of this time period may be granted for good cause.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984). Copies of such objections shall be served on opposing parties, District Judge Berger and this Magistrate Judge.

The Clerk is requested to send a copy of this Proposed Findings and Recommendation to Plaintiff, who is acting *pro se*, and transmit a copy to counsel of record.

Date: February 4, 2013.

R. Clarke VanDervort
United States Magistrate Judge