# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### BECKLEY DIVISION

BRIAN L. BROWN,

                    Petitioner,

v.                                                    CIVIL ACTION NO.   5:12-cv-01178

JOEL ZEIGLER,

                    Respondent.

## MEMORANDUM OPINION AND ORDER

The Court has reviewed Plaintiff's Application for Writ of Habeas Corpus Under 28 U.S.C. § 2241 (Document 2), Defendants' Motion to Dismiss or in the Alternative Motion for Summary Judgment (Document 14) and attached exhibits, together with all written submissions in support and in opposition. By Standing Order (Document 4) entered April 17, 2012, this action was referred to the Honorable R. Clarke VanDervort, United States Magistrate Judge, for submission to this Court of proposed findings of fact and recommendation for disposition, pursuant to 28 U.S.C. § 636(b)(1)(B).

On February 4 2013, the Magistrate Judge submitted his Proposed Findings and Recommendation ("PF&R") (Document 52), wherein he recommended that this Court grant the Defendants' Motion to Dismiss or in the Alternative Motion for Summary Judgment, dismiss this matter, and remove it from the court's docket. Plaintiff's objections to the PF&R were due by February 22, 2013. On February 15, 2013, the PF&R that was sent to Plaintiff was returned as undeliverable and re-mailed on that date (Document 55).   No objections to the PF&R had been

filed as of March 5, 2013, and therefore, the Court filed its Memorandum Opinion and Order adopting the Magistrate's PF&R and ordering that that Defendant's Motion to Dismiss or in the Alternative Motion for Summary Judgment be granted and that the matter be dismissed and removed from the Court's docket (Document 56).

On March 18, 2013, Plaintiff filed a *Motion for Access Change and Other Motions* (Document 58), wherein he moves the court to "(1) Take notice of the current address change; (2) Nature of Constitutional Violation likely to continue as Brown was once again placed in a prison where known separations exist; (3) Motion for a copy of rules, local rules of the Court, specifically dealing with Court ordered use of 'Black Pens,' rather than a light gray crayon; (4) Motion for order to use Black Pen; (5) Notice of Blocking Access to the Courts." (*Id.* at 2.)[1]

On April 1, 2013, Plaintiff filed a *Motion to Reconsider Fed.R.Civ.P. 60(b)* (Document 59).[2]  Plaintiff explains that from December 7, 2012, until his transfer on January 4, 2013, he was held in a medical ward and was unable to contact the Court. (*Id.* at 2.)   He further asserts that as a result of a lockdown at USP Canaan and an attack by officers, he was unable to file any documents from December 2012 to February 2013. (*Id.* at 2-3.)   Plaintiff moves for a "chance to reverse by objections." (*Id.* at 3.)

On May 13, 2013, Plaintiff filed a *Motion for Reconsideration Permission to Allow Out Of Time Objection for Good Cause*. (Document 60.)[3]   Plaintiff asserts that he received a copy of the Magistrate's PF&R on March 17, 2013, and therefore, could not have filed objections on time. (*Id.* at 2-5.) Accordingly, he moves the Court to consider and review his attached objections. (*Id.* at 6-8.)

---

1 Plaintiff's letter was processed by USP Canaan on March 5, 2013. (*Id.* at 10.)
2 The Court construes Plaintiff's motion as a motion to allow late filed objections.
3 The Court construes Plaintiff's motion as a motion to consider his attached objections.

For good cause shown, the Court will review Plaintiff's objections. After thorough review and consideration, the Court finds, for the reasons stated herein, that Plaintiff's objections (Document 60) should be overruled.

### FACTUAL AND PROCEDURAL HISTORY

Magistrate Judge VanDervort's PF&R sets forth in detail Plaintiff's motions. The Court now incorporates by reference those facts and procedural history.  To provide context for the ruling herein, the Court provides the following summary.

On April 17, 2012, Plaintiff, then an inmate at FCI-Beckley, filed an Application to Proceed Without Prepayment of Fees and Costs (Document 1) and a Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241 (Document 2).   Plaintiff states that his "[s]entence being served is [sic] violation of Regulated Liberty Rights, and is significant and atypical than those with some or similar custody." (*Id.* at 2.)  Plaintiff alleges that "being forced to house in SHU [("Special Housing Unit")], for last 1090 to 2920 days" violates his "liberty interest" and is "[a]typical and significant and unconstitutional." (*Id.* at 7.) Plaintiff also alleges that he has been placed in SHU "since 2004 to 2008, then 2009 to 2012 . . . [and] DSCC continues to place [sic] in SHU, and refuses to follow policy . . . [and] sends [sic] to prisons that are not safe violating 28 C.F.R. 541.23 (90 day rule)." (*Id.* at 8.)   Specifically, Plaintiff claims that "DSCC and Warden are attempting to send [him] back to a prison [USP Hazelton] where a verified threat was made." (*Id.*) Plaintiff alleges that if transferred, he will be in "imminent danger of harm," and therefore, would be placed back in SHU. (*Id.*) Plaintiff requests the following relief: "Grant Writ of Habeas Corpus Writ of Assistance, or Temporary Restraining Order, Grant Stay to Exhaust Remedies, to gather facts in case, then Grant Writ of Habeas Corpus, to mandate BOP follow Regulations and stop the Atypical

[and] Significant Housing in SHU, when other (safe) prisons are available [and] Grant Liberty restricted to Federal Regulations as Published [-] Allowing timely remedies." (*Id.* at 9.)

Also on April 17, 2012, Plaintiff filed a *Motion for Emergency Preliminary Injunction* (Document 3).   Plaintiff states that on January 10, 2012, he was transferred to USP Hazelton. (*Id.* at 3.) He asserts that prison officials verified that he was subject to a threat, and immediately placed him in SHU under protective custody. (*Id.*) Then on February 29, 2012, due to conditions at USP Hazelton, he was transferred to FCI-Beckley and placed in its SHU. (*Id.* at 4.)   Plaintiff states that on April 11, 2012, he was informed that he was "going back to USP Hazelton where he is under imminent danger of serious bodily harm." (*Id.*) Plaintiff also alleges that he is being denied administrative remedies and pen and paper to comply with court orders. (*Id.*) Plaintiff moves the Court to (1) enjoin the Warden, his successor in office, and those under his supervision from refusing access to administrative remedies; (2) order that the Warden provide supplies necessary to process his administrative claims; and (3) enjoin the Warden from transferring him back to USP Hazelton until he exhausts his administrative remedies. (*Id.* at 5.)

On April 18, 2012, Magistrate Judge VanDervort construed Plaintiff's Application for Writ of Habeas Corpus Under 28 U.S.C. § 2241 (Document 2) as a Complaint seeking relief pursuant to *Bivens v. Six Unknown Federal Agents of Federal Burea of Narcotics,* 403 U.S. 388 (1971). (Document 5.) The Magistrate Judge found that Plaintiff had potentially stated a claim under the Eight Amendment and the Fifth Amendment of the United States Constitution in alleging that his safety will be in jeopardy if he is returned to USP Hazelton and that he has been held for a long period of time in SHU. (*Id.*) Therefore, the Magistrate Judge granted Plaintiff's Application to Proceed Without Prepayment of Fees and Costs and ordered the Clerk to issue

process upon the Defendants as specified in Rule 4(i)(1) – (3) of the Federal Rules of Civil Procedure. (Document 5 at 6-7.)[4]

On June 13, 2012, Defendant filed a Motion to Dismiss or in the Alternative Motion for Summary Judgment ("Def.'s Mot.") (Document 14), attached exhibits, and a memorandum in support. ("Def.'s Mem.") (Document 15.)[5] Defendant asserts seven grounds for dismissal: "(1) Plaintiff has failed to exhaust his administrative remedies; (2) Defendant cannot be sued in his official capacity; (3) Plaintiff makes no specific claims against Warden Ziegler; (4) Plaintiff's Fifth Amendment claim must be dismissed because plaintiff has no liberty interest in avoiding confinement in administrative segregation; (5) [c]onditions in SHU do not violate the Eighth Amendment; (6) Plaintiff cannot recover for emotional or psychological damages without a showing of physical injury; (7) Defendant is entitled to qualified immunity." (Document 14 at 1.) With respect to the first ground for dismissal, Defendant cites to the June 8, 2012, Declaration of Sharon Wahl, a paralegal for the Beckley Consolidated Legal Center, to show that Plaintiff did not file any administrative remedies with respect to the claims in his case prior to filing his lawsuit. (Document 14-1.) Ms. Wahl states that as a paralegal she has access to information regarding inmates in the BOP's custody, including the "[BOP's] SENTRY computer database, which tracks

---

4 On April 30, 2012, Plaintiff filed a *Motion to Reconsider Doc 8 Order* (Document 10), wherein he "moves this Court to keep [the] action as a Habeas Corpus 2241." (*Id.* at 2.) In support, Plaintiff states that he "is not challenging the validity of his original conviction but the imposition of segregated confinement without elementary due process and without just cause." (*Id.* at 3.) Plaintiff contends that his long term confinement in SHU constitutes an "atypical and significant hardship" in violation of the United States Constitution and BOP regulations. (*Id.* at 3, 10.) The Court notes that although Plaintiff's motion requests that the Court "reconsider Doc 8 Order," Plaintiff clearly intended the Court to reconsider its determination in Document 5 (Order Granting Application to Proceed Without Prepayment of Fees).
5 Defendant's attached exhibits include (1) the Declaration of Sharon Wahl (Document 14-1); (2) the Declaration of Joel Ziegler (Document 14-2); and (3) an unpublished opinion from Fourth Circuit Court of Appeals and a Northern District of West Virginia memorandum opinion and order. (Document 14-3.)

the status, activities, administrative remedies, and disciplinary actions of inmates in federal

custody." (*Id.* at 1.) Based upon that information, Ms. Wahl states the following:

> 11. Upon his arrival at FCI Beckley on February 29, 2012, Plaintiff was placed in administrative detention in the Special Housing Unit as a "trans seg," meaning transfer for segregation.

> 12. Plaintiff's SENTRY records show that he has filed an administrative remedy request on April 9, 2012, regarding supplies, such as paper, pen, and envelopes. The remedy has not yet been answered.

> 13. Additionally, he has filed four other remedy requests at FCI Beckley regarding different issues.

> 14. One of those remedies, Remedy ID 689542-F1, filed on May 23, 2012, deals with his cell assignment in SHU, but was rejected as being untimely.

(*Id.* at 1-2.) Attached to Ms. Wahl's declaration is a copy of records from the BOP's SENTRY

from April 9, 2012 through June 6, 2012. (*Id.* at 2-6.)

On October 26, 2012, Plaintiff filed his Response to Defendant's Motion to Dismiss or in

the Alternative for Summary Judgment. (Document 39.)[6] Plaintiff moves the Court to consider his

claims under 28 U.S.C. § 2241, and not *Bivens,* and lists seven reasons why Defendant's motion

should be denied. (*Id.* at 2-5.) Plaintiff states that: (1) he has exhausted his administrative

remedies; (2) Defendant can be sued in his official capacity under Section 2241 and will be sued in

his individual capacity if this action is reviewed under *Bivens*; (3) he has made a specific complaint

against Defendant under Section 2241, but if the Court considers his claims under *Bivens,* "the

Amended Complaint clearly shows the [Defendant's] involvement;" (4) he has made a claim that

---

6 By Order entered July 17, 2012, Magistrate Judge VanDervort granted Plaintiff's Motion for Extension of Time (Document 29) and ordered that Plaintiff file his response to Defendant's Motion to Dismiss or in the Alternative Motion for Summary Judgment by September 17, 2012. (Document 31.) Then, by Order entered September 25, 2012, Magistrate Judge VanDervort granted Plaintiff's Motion for Extension of Time (Document 36) and ordered that Plaintiff file his response to Defendant's Motion to Dismiss or in the Alternative Motion for Summary Judgment by October 22, 2012. (Document 37.)

"the abuse of long term confinement" violates his constitutional rights; (5) "[l]iberty given rights within the BOP Regulations limit confinement, and excessive confinement, which causes physical, and psychological harm" and violates the Eighth Amendment; (6) although he cannot recover for psychological damages without showing of personal injury, he "will show he suffers both as direct and proximate result;" and (7) "Defendant is not entitled to qualified immunity." (*Id.* at 4-5.) Plaintiff also asserts that "Defendant has and continues to go to great lengths to produce levels of unethical blocking of access to Courts." (*Id.* at 5.)

Also on October 26, 2012, Plaintiff filed his *Second Motion to Reconsider Doc 5 / or Request for Permission for Leave to File an Amended Complaint* (Document 41) with an attached proposed amended complaint. (Document 41-1.) Plaintiff again moves the Court to consider his claims under Section 2241, but if not, he "moves to re-file, or amend [his] complaint to properly conform to a *Bivens* action."

On October 31, 2012, Defendant filed his Reply (Document 42).  Defendant argues that "[Plaintiff] provides no factual support to challenge the exhaustion information in the Declaration of Sharon Wahl, which is fatal to his complaint and request to amend his complaint." (*Id.* at 1.) Therefore, Defendant asserts that "[a]n amended complaint will not cure his failure to exhaust his administrative remedies." (*Id.*) (citing *Perkins v. United States,* 848 F.Supp. 1236, 1240-42 (S.D.W.Va. 1994.))

On November 9, 2012, Plaintiff filed a *Motion to File Exhibits under Seal* (Document 44) and attached exhibits, apparently intended to support his Response in Opposition to Defendant's Motion. Plaintiff's Exhibits include a copy of the following: (1) Plaintiff's Inmate Skills Development Plan; (2) a blank FCI Beckley Informal Resolution Form; (3) documents pertaining

to Plaintiff's administrative complaints at FCI Beckley; (4) an inventory of Plaintiff's personal property dated June 21, 2012; (5) the Declaration of the Defendant attached to his Motion to Dismiss or in the Alternative Motion for Summary Judgment; (6) BOP regulations pertaining to the conditions of disciplinary segregation; (7) the BOP's Policy Statement P5100.08; (8) a Custody Classification Form; (9) a Request for Transfer/Application of Management Variable Forms dated November 8, 2004 when Plaintiff was at USP Leavenworth; (10) a July 10, 2012 letter to Plaintiff from the Clerk of the Fourth Circuit Court of Appeals notifying Plaintiff that his appeal had been dismissed; (11) an April 4, 2012 letter from the Clerk of the Eighth Circuit Court of Appeals; (12) a June 13, 2012 Report and Recommendation of the United States Magistrate Judge Kaull from the Northern District of West Virginia recommending dismissal of Plaintiff's Section 2241 Petition; and (13) an Order entered by United States District Judge John Bailey dismissing Plaintiff's case considered under *Bivens.* (Document 44-1.)

### *STANDARD OF REVIEW*

This Court "shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made."   28 U.S.C. § 636(b)(1)(C). However, the Court is not required to review, under a *de novo* or any other standard, the factual or legal conclusions of the magistrate judge as to those portions of the findings or recommendation to which no objections are addressed.   *Thomas v. Arn*, 474 U.S. 140, 150 (1985).   In addition, this Court need not conduct a *de novo* review when a party "makes general and conclusory objections that do not direct the Court to a specific error in the magistrate's proposed findings and recommendations."   *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir.1982).   When reviewing portions of the PF&R *de novo,* the Court will consider the fact that Plaintiff is acting *pro se,* and his

8

pleadings will be accorded liberal construction.   *Estelle v. Gamble,* 429 U.S. 97, 106 (1976); *Loe v. Armistead,* 582 F.2d 1291, 1295 (4th Cir.1978).

## APPLICABLE LAW

### A.  Motion to Dismiss

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp v. Twombly,* 550 U.S. 544, 570 (2007)). In other words, this "plausibility standard requires a plaintiff to demonstrate more than 'a sheer possibility that a defendant has acted unlawfully.'" *Francis v. Giacomelli,* 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Twombly,* 550 U.S. at 570). In the complaint, a plaintiff must "articulate facts, when accepted as true, that 'show' that the plaintiff has stated a claim entitling him to relief." (*Id.*) (quoting *Twombly,* 550 U.S. at 557).

In reviewing a motion to dismiss, the Court must "accept as true all of the factual allegations contained in the complaint," *Erikson v. Pardus,* 551 U.S. 89, 93 (2007), and "draw[ ] all reasonable factual inferences from those facts in the plaintiff's favor." *Edwards v. City of Goldsboro,* 178 F.3d 231, 244 (4th Cir.1999).  However, the Court need not "accept as true unwarranted inferences, unreasonable conclusions, or arguments." *E. Shore Mkts., v. J.D. Assocs. Ltd. P'ship,* 213 F.3d 175, 180 (4th Cir. 2000). "Determining whether a complaint states [on its face] a plausible claim for relief [which can survive a motion to dismiss] will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal,* 556 U.S. at 679.

### B.  Motion for Summary Judgment

The well-established standard in consideration of a motion for summary judgment is that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U .S. 242, 247 (1986). A "genuine" dispute concerning a "material" fact arises when the evidence is sufficient to allow a reasonable jury to return a verdict in the nonmoving party's favor. *Anderson*, 477 U .S. at 248.

The moving party bears the burden of showing that there is no genuine issue of material fact, and that it is entitled to judgment as a matter of law. *Celotex,* 477 U.S. at 322-23.  However, the non-moving party must offer some "concrete evidence from which a reasonable juror could return a verdict in his favor." *Anderson*, 477 U.S. at 256. In other words, "the nonmoving party must come forward with more than 'mere speculation or the building of one inference upon another' to resist dismissal of the action." *Perry v. Kappos*, No.11-1476, 2012 WL 2130908, at *3 (4th Cir. June 13, 2012) (unpublished decision) (quoting *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir.1985)). The parties must support their factual assertions by citing to particular materials in the record, including documents, affidavits, and declarations. Fed.R.Civ.P. 56(c)(1)(A).

In considering a motion for summary judgment, the Court will not "weigh the evidence and determine the truth of the matter." *Anderson*, 477 U.S. at 249.  Instead, the Court will draw any permissible inference from the underlying facts in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986). If

factual issues exist that can only be resolved by a trier of fact because they may reasonably be resolved in favor of either party, summary judgment is inappropriate. *Anderson*, 477 U.S. at 250.

### DISCUSSION

#### A.  The Magistrate Judge's Findings

First, the Magistrate Judge found that Plaintiff's claims are not cognizable under Section 2241. (PF&R at 12.) Rather, "Plaintiff's allegations which arise out of the conditions of his confinement amount to claims under <u>Bivens</u>." (*Id.* at 14.)   Furthermore, based upon the Declaration of Sharon Wahl (Document 14-1) and Plaintiff's Exhibits (Document 44, Exhibit 3), the Magistrate Judge found that Plaintiff failed to exhaust available administrative remedies with respect to his claims. (PF&R at 18.)   Therefore, the Magistrate Judge recommended that this Court grant Defendant's Motion to Dismiss or in the Alternative Motion for Summary Judgment, dismiss this matter, and remove it from the docket. (*Id.* at 20.)

#### i.      Section 2241 or Bivens

The Magistrate Judge correctly found that Plaintiff's claims should be considered under *Bivens* by considering his claims and examining the differences between a Section 2241 and a *Bivens* action. (PF&R at 12-14.)   The Magistrate Judge explained that while "[c]laims pertaining to [the] manner in which a sentence is executed most often involving the fact or duration of confinement are considered under Section 2241," a *Bivens* action "is a judicially created damages remedy which is designed to vindicate violations of constitutional rights by federal actors." (*Id.*) (citing *Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics*, 403 U.S. 388, 395-97 (1971)).   He noted that in order to assert a proper *Bivens* claim, a plaintiff must show a

11

violation of a valid constitutional right by a person acting under the color of federal law. (PF&R at 13.)

The Magistrate Judge found that Plaintiff is contending that he has suffered a continuing violation of his constitutional rights at the hands of Defendant because: (1) he has been held in SHU for most of his incarceration; (2) he has been transferred back to USP Hazelton where he is subject to a risk of physical harm; and (3) Defendant has denied him his constitutional right of access to the Courts by withholding services and supplies for preparing and mailing legal documents. (*Id.* at 12.)   Thus, Plaintiff's claims arise out of the conditions of his confinement due to alleged violations of constitutional rights. (*Id.* at 14.)   Therefore, the Magistrate Judge found that Plaintiff's allegations amount to claims under *Bivens*. (*Id.*)

## ii.    *Exhaustion of Administrative Remedies*

The Magistrate Judge also correctly found that Plaintiff failed to exhaust his administrative remedies. (PF&R at 14.) As the Magistrate Judge noted, pursuant to the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997(e)(a)(1996), "[n]o action shall be brought with respect to prison conditions under section 1983 of this title or any other federal law, by a prisoner confined in any jail, prison, or other correction facility until such administrative remedies as are available are exhausted." In other words, the PLRA requires that inmates exhaust available administrative remedies prior to filing civil actions, including requesting injunctive relief. (PF&R at 14) (citing 42 U.S.C. § 1997(e)(a)(1996); *Woodford v. Ngo*, 548 U.S. 81, 85 (2006); *Porter v. Nussle*, 534 U.S. 516, 525 (2002); *Goist v. U.S. Bureau of Prisons*, 2002 WL 32079467, at *4, fn. 1 (D.S.C. Sept. 25, 2002), aff'd 54 Fed. App'x 159 (4th Cir.2003) cert. denied, 538 U.S. 1047 (2003)). The Magistrate stressed that "there is no futility exception to the PLRA's exhaustion requirement."

(PF&R at 14) (quoting *Massey v. Helman,* 196 F.3d 727, 733 (7th Cir.1999).   However, he noted that only *available* administrative remedies are required to be exhausted and that "[a] grievance procedure is not 'available' if prison officials prevent an inmate from using it." (PF&R at 14-15) (citing *Dale v. Lappin,* 376 F.3d 652, 656 (7th Cir.2004); *Mitchell v. Horn,* 318 F.3d 523, 529 (3rd Cir.2003); *Miller v. Norris,* 247 F.3d 736, 740 (8th Cir.2001).

The Magistrate Judge also noted that because failure to exhaust administrative remedies is an affirmative defense, an inmate does not need to allege or prove that he has exhausted his administrative remedies. (PF&R at 16) (citing *Jones v. Bock,* 549 U.S. 199 (2007); *Anderson v. XYZ Correctional Health Services,* 407 F.3d 674, 677 (4th Cir.2005)).   Rather, the defendant prison officials have the burden of showing that an inmate has not exhausted the administrative remedies available to him. (*Id.*) (citing *Dale v. Lappin,* 376 F.3d 652, 655 (7th Cir.2004)). "For Bivens purposes, proper exhaustion of available administrative remedies requires that 'a prisoner must submit inmate complaints and appeals in the place, and at the time, the prison's administrative rules require." (PF&R at 16) (quoting *Lappin*, 376 F.3d at 655 (internal citation omitted)).

The Magistrate Judge then outlined the Federal Bureau of Prison's ("BOP") grievance procedure, the Administrative Remedy Program, 28 C.F.R. § 542.10, *et seq.,* through which an inmate can seek formal review of issues relating to his confinement. (PF&R at 17.) The entire process takes about 120 days to complete. (*Id.*) As a general matter, an inmate is required to first present and attempt to resolve his complaint informally through an Inmate Request to Staff Member form before submitting a Request for Administrative Remedy.[7] (*Id.*) (citing 28 C.F.R. §

---

7 If the Inmate Request to Staff Member form is improper for some reason, it may be rejected. However, the inmate will then be advised of the proper procedure. (PF&R at 17.)

13

542.13.) An Administrative Remedy Request must be completed on the appropriate form (BP-9) within twenty calendar days of the date giving rise to the basis for the Request. (PF&R at 17) (citing 28 C.F.R. § 542.14(a)). The form must be submitted to the institutional staff member designated to receive such Requests or under exceptional circumstances to the appropriate regional Director.[8] (PF&R at 17) (citing 28 C.F.R. § 542.14(a), (c)(4), (d)). If an inmate directed his Request to the Warden and was not satisfied with his response, the inmate may submit an appeal on a BP-10 form to the appropriate Regional Director within twenty calendar days of the Warden's signed response. (PF&R at 17) (citing 28 C.F.R. § 542.15(a) and (b)).   If the inmate is not satisfied with the Regional Director's response, he may then submit an appeal on a BP-11 form to the General Counsel within thirty days of the Regional Director's signed response.[9] (PF&R at 17) (citing 28 C.F.R. § 542.15(a)). The Magistrate Judge noted that an appeal to the General Counsel is the final administrative appeal, and thus, the administrative process is exhausted when the General Counsel issues his ruling. (PF&R at 17) (citing 28 C.F.R. § 542.15(a)).

The Magistrate Judge recognized that an inmate's Request or Appeal may be rejected at any level and returned to him without a response if the submission does not comply with the administrative remedies requirements.[10](PF&R at 18) (citing 28 C.F.R. § 542.17(a)). When a submission is rejected, the inmate will be provided with written notice explaining the reason for the rejection. (*Id.*) (citing 28 C.F.R. § 542.17(b)). If the reason for the rejection is correctable, the notice will provide the inmate with an opportunity to correct the defect and resubmit his Request for Appeal. (*Id.*) If a Request for Appeal is rejected and the inmate is not given an opportunity to

---

8 Once a Request is filed, the Warden or the Regional Director must respond within twenty or thirty calendar days, respectively. (PF&R at 17) (citing 28 C.F.R. § 542.18.)
9 The General Counsel has forty days to respond to an inmate's appeal. (PF&R at 17) (citing 28 C.F.R. § 542.18.)
10 The Magistrate also noted that a submission may be rejected if it is written in an obscene or abusive manner. (PF&R at 18) (citing 28 C.F.R. § 542.17(a)).

correct the defect, he may appeal the rejection to the next level. (PF&R at 18) (citing 28 C.F.R. § 542.17(c)).

The Magistrate Judge found that Plaintiff failed to exhaust available administrative remedies with respect to his claims in this action based upon his review of the Declaration of Sharon Wahl (Document 14-1) and Plaintiff's Exhibits (Document 44-1). (PF&R at 18-20.) The Magistrate noted that Plaintiff's documents indicate that he submitted five Administrative Remedy Forms. (*Id.*)

First, by a Central Office Administrative Remedy Appeal dated December 7, 2011, Plaintiff complained about a decision regarding his custody classification and a decision to place him in SHU for one year.[11] (PF&R at 18) (citing Document 44-1 at 25.)   At the time, Plaintiff was housed in the Oklahoma City FTC. (*Id.* at 26.) The BOP's office received Plaintiff's form on December 13, 2011, and rejected the same on January 5, 2012, based upon Plaintiff's failure to first file a BP-9 Request through the Institution, for the Warden's review and response. (PF&R at 18-19) (citing Document 44-1 at 25-26.)

Second, by a Request for Administrative Remedy Informal Resolution Form dated March 28, 2012, Plaintiff complained that members of the Unit Staff were "intentionally blocking access to the courts by refusing supplies for legal work necessary to contact the court." (PF&R at 19) (citing Document 44-1 at 31.) Resolution was not accomplished. (*Id.*) The Magistrate Judge recognized that "[a]n inmate's complaint alleging deprivation of the right of access to the Courts must contain specific allegations respecting the conduct of prison official which resulted in the

---

11 The Magistrate Judge noted that "inmates do not have a property or liberty interest in custodial classification" and "[l]ikewise, inmates have no constitutional right to be incarcerated in any particular institution, and prison officials have discretion in deciding to transfer them to which the Courts defer." (PF&R at 18, fn. 5 (citing *Meachum v. Fano*, 427 U.S. 215 (1976)).

deprivation and an injury which the inmate actually sustained." (PF&R at 19) (citing *O'Dell v. Netherland,* 112 F.3d 773, 776 (4th Cir.1997)). The Magistrate Judge found that "Plaintiff has not alleged any actual injury nor is one evident from the record" as he has been able to file numerous documents in this action. (*Id.*)

Third, by Request for Administrative Remedy dated March 30, 2012, Plaintiff complained that "[t]he Unit Staff . . . refused to allow any paper or envelopes necessary for compliance to active Court cases which has caused several missed deadlines, thus causing actual injury." (*Id.*) (citing Document 44-1 at 23.) That Request was received by Defendant's office on April 9, 2012, and designated BEC-683223-F1. (*Id.*) (citing Document 44-1 at 22.)   After reviewing the issues in Plaintiff's Request, Defendant's office responded on July 3, 2012, finding that Plaintiff's Unit Team did provide him with writing paper, an ink pen, envelopes, and postage. (*Id.*)

Fourth, by a Request for Administrative Remedy dated April 6, 2012, Plaintiff reiterated his complaints concerning his custody classification and placement in SHU. (*Id.*) (citing Document 44-1 at 29.) Defendant's office received the Request on May 23, 2012, designated it as 689523-F1, and rejected it that same day. (*Id.*)

Fifth, by a Request for Informal Resolution dated April 26, 2012, Plaintiff complained that his Unit Manager had denied his requests for postage to maintain contact with his family. (*Id.*) (citing Document 44-1 at 30.) Informational Resolution of Plaintiff's complaint was not accomplished. (*Id.*)

In reviewing Sharon Wahl's declaration, which outlines Plaintiff's administrative remedy activity between April 9, 2012 and June 6, 2012, and Plaintiff's Exhibits, the Magistrate Judge noted that it is not evident that Plaintiff processed any administrative claim through the Office of

16

the General Counsel. (PF&R at 19-20.) Based upon Plaintiff's Exhibits, the Magistrate Judge found the administrative process was available to him but that he failed to complete the process with respect to any of his claims. (*Id.* at 20.)   Accordingly, the Magistrate Judge found that Plaintiff failed to exhaust available administrative remedies with respect to his claims in this matter. (*Id.*) Therefore, he recommended that this Court dismiss Plaintiff's Complaint based upon his failure to exhaust the administrative remedies available under the BOP's Administrative Remedy Program before filing the instant action. (*Id.*) (citing 28 C.F.R. § 542.10, *et seq.*)

### B.  Plaintiff's Objections

In his second Motion for Reconsideration (Document 60), Plaintiff submits two objections to the Magistrate Judge's PF&R.  First, Plaintiff argues that "[he] should have been allowed forms to file a[n] amended complaint and the leave to do so." (*Id.* at 6.)[12] Second, he argues that "[he] could not file proper administrative remedies as counselor failed to timely provide answers, forms, and memos." (*Id.*)[13] Plaintiff explains that:

> The warden issued an informal resolution form (Doc 14, (2)). The Counselor refused to timely file the remedies, if time complained is viewed, and time to respond. And the counselor who made forms late, refused memo or forms to continue the process. [He] can't finish remedies that no forms are available and, memos for delays are not produced by Counselor.

(*Id.* at 7.)

In other words, he argues that "[he] did file remedies, but it was the counselor who failed to timely file the remedies, intentionally causing denial of remedies. And it was Warden who made counselor not show up in SHU weeks at a time. [He] cannot comply with rules that counselor or

---

12  Plaintiff relies on his arguments found in Document 44 to argue he should have been allowed to amend his complaint. (*Id.* at 9.)

13  Plaintiff states that he "incorporates the arguments found in Doc. No. 39." (*Id.* at 7.)

Warden chooses to follow or not." (*Id.* at 8.) In sum, he argues that he was prevented from exhausting administrative remedies because "[i]t was the Defendant, not Brown who failed to comply with forms, stamps, or timely filing." (*Id.*at   8-9.)

### C.  The Court's Findings

The Court finds that Plaintiff's objections are without merit, and therefore, should be overruled.[14]  As noted above, the PLRA requires prisoners to exhaust all available administrative remedies before filing a civil action in federal court. 42 U.S.C. § 1997(e)(a). "[A]n administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it." *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir.2008.) However, "there is no futility exception to the PLRA's exhaustion requirement." *Massey v. Helman,* 196 F.3d 727, 733 (7th Cir.1999); *Booth v. Churner,* 532 U.S. 731, 741 (2001) ("we will not read futility or other exceptions into statutory exhaustion requirements . . ."). Exhaustion is required for "[a]ll action[s] . . . brought with respect to prison conditions, whether under § 1983 or any other Federal law." *Porter v. Nussle,* 534 U.S. 516, 524, (2002) (internal quotations omitted). Although exhaustion is not jurisdictional, the failure to exhaust administrative remedies is an affirmative defense that can be pled by defendants. *Jones,* 549 U.S. at 216-17; *Anderson v. XYZ Correctional Health Services,* 407 F.3d 674, 683 (4th Cir.2005) ("[A]n inmate's failure to exhaust administrative remedies is an affirmative defense to be pleaded and proven by the defendant.").

Because exhaustion is a prerequisite to filing suit, administrative remedies must be exhausted *before* filing a complaint in federal court, not after or contemporaneous therewith. *Cannon v. Washington,* 418 F.3d 714, 719 (7th Cir.2005) ("a prisoner may not file a lawsuit before

---

14  The Court notes that Plaintiff is acting *pro se*, and thus has accorded his pleadings liberal construction.   *Estelle*, 429 U.S.at 106; *Loe*, 582 F.2d at 1295.

exhausting his administrative remedies, even if he exhausts those remedies while the litigation is pending."); *Freeman v. Francis,* 196 F.3d 641, 645 (6th Cir.1999) (Prisoner "may not exhaust administrative remedies during the pendency of the federal suit."). In order "to be entitled to bring suit in federal court, a prisoner must have utilized all available remedies 'in accordance with the applicable procedural rules,' so that prison officials have been given an opportunity to address the claims administratively." *Moore*, 517 F.3d at 725 (internal citation omitted).

Based upon Plaintiff's Exhibits and Sharon Wahl's Declaration and the entire record, the Court finds that Plaintiff did not exhaust his available administrative remedies with respect to his claims prior to filing this civil action. Plaintiff did file a Request for Administrative Remedy with FCI Beckley dated April 6, 2012, regarding his placement in the SHU. However, that request was not filed or ruled upon until after Plaintiff filed this civil action. (Document 44-1 at 29.) Plaintiff filed this action on April 17, 2012. (Document 1.) However, the Warden's Office at FCI Beckley did not receive or rule upon the Request until May 23, 2012. (Document 44-1 at 29.) Because the Request was still pending when Plaintiff filed the instant action, he had not exhausted his administrative remedies before filing his Complaint. *See,* 42 U.S.C. § 1997(e)(a); *Cannon,* 418 F.3d at 719; *Freeman,* 196 F.3d at 645. In other words, at the time Plaintiff filed his Complaint in this Court, no final determination had been made by the Warden, no substantial delay had occurred, and no further grievance steps had been taken with respect to his claims. Therefore, the Court finds that Plaintiff did not exhaust his administrative remedies prior to filing this civil action.

Moreover, the Court finds that administrative remedies were available to him as evidenced by Plaintiff's own exhibits and SENTRY records. *See,* Document 44-1; Document 14-1. Although Plaintiff argues that he was prevented from exhausting his administrative remedies

19

because the counselor refused to provide him with forms and caused delays, the record reflects that Plaintiff did have administrative remedies available to him. By a Request for Administrative Remedy Informal Resolution Form dated March 28, 2012, Plaintiff complained that Unit Staff were intentionally blocking access to the courts. (Document 44-1 at 31.)[15]  Plaintiff filed another remedy request on April 9, 2012, regarding supplies such as paper, pen and envelopes. (Document 44-1 at 23; Document 14-1 at 4.)[16]  By a Request for Informal Resolution dated April 26, 2012, Plaintiff complained that his Unit Manager had been denying his requests for postage to maintain contact with his family since May 1, 2012. (Document 44-1 at 30.)[17]  On May 16, 2012, Plaintiff filed a remedy request regarding medical care, specifically eye patches. (Document 14-1 at 4.) On May 22, 2012, he filed a remedy request regarding copies of legal paperwork. (Document 14-1 at 5.) On May 23, 2012, he filed a remedy request regarding postage stamps. (*Id.*) Finally on May 23, 2012, he filed a remedy request regarding the issue in this case, his SHU assignment. (Document 44-1 at 29; Document 14-1 at 6.) Based upon the foregoing, it is clear that although Plaintiff had access to administrative remedies, he did not file a request regarding the claims in the instant case until May 23, 2012.

Even assuming Plaintiff's allegation that the Counselor refused to timely file his remedies is true and his request should have been filed on April 6, 2012, Plaintiff still would not have exhausted his available administrative remedies prior to filing suit because the Warden did not issue a ruling on his request until May 23, 2012. (Document 44-1 at 29; Document 14-1 at 6.)

15  Informal resolution was not accomplished. However, according to the form, the Counselor was contacted and "[he] made provisions for [Plaintiff] to receive an ink pen and provided [him] with typing paper. Special Housing Unit Staff distributes envelopes weekly." (*Id.*)
16  On July 3, 2012, Defendant's office responded to Plaintiff's request and found that Plaintiff's Unit Team did provide him with writing paper, an ink pen, envelopes, and postage. (*Id.* at 22.)
17  Informal Resolution of Plaintiff's complaint was not accomplished. (*Id.*) However, according to the form, staff or departments "[h]ave been providing [Plaintiff] with 5 stamps a month for social contacts." (*Id.*)

Accordingly, the Court overrules Plaintiff's objection that he could not exhaust his administrative remedies because he was prevented from doing so.

Even considering Plaintiff's Amended Complaint, he has failed to state a claim which would entitle him to relief under *Bivens. See,* 42 U.S.C. § 1997e(a). Plaintiff's proposed amended complaint suffers from the same procedural defect as his Complaint - failure to exhaust his available administrative remedies before filing suit. (Document 41-1.) Therefore, his motion to amend the complaint would be futile.[18] Allowing Plaintiff to amend his compliant at this late juncture does not cure the problem because exhaustion must be completed prior to filing a complaint. "The PLRA requires that administrative remedies be exhausted as to all claims prior to the filing of the initial complaint." *Young v. Thompson,* 2011 WL 3297493 (N.D.W.Va.2011) (citing 42 U.S.C. § 1997e(e); *Porter v. Nussle,* 534 U.S. 516, 524 (2002); *Booth v. Churner,* 532 U.S. 731, 741 (2001)). Accordingly, the Court also overrules Plaintiff's objection that he should have been allowed to file his amended complaint.[19]

### CONCLUSION

After careful consideration and for good cause shown, the Court **ORDERS** that Plaintiff's motions for reconsideration (Documents 59 and 60)[20] be **GRANTED only** to the extent that the Court has substantively reviewed his untimely objections and arguments, and **DENIED** to the

---

18 The Court notes that the Magistrate Judge did not rule on "Plaintiff's Second Motion to Reconsider Doc 5 / or Request for Permission for Leave to File an Amended Complaint" (Document 41) filed on October 26, 2012.

19 Pursuant to Rule 15 of the Federal Rules of Civil Procedure, a party may amend his pleadings once as a matter of course within 21 days after service, or, if it is a pleading requiring a response, within 21 days after service of a response or service of a motion under Rule 12(b), (e), or (f). Fed.R.Civ.P. 15(a)(1). Otherwise, a party may amend his pleading only with the written consent of the opposing party or by leave of the Court. Fed.R.Civ.P. 15(a)(2). Because Plaintiff filed his motion to amend after Defendant had filed his motion under Rule 12(b) and had not received written consent from opposing counsel to amend his Complaint, he could have only done so with leave of the court.

20 The Court construes Plaintiff's Motions to Reconsider as motions for leave to file out of time objections and to have the Court consider and review the same.

extent that the motions ask the Court to alter its prior ruling.   Based on the findings herein, the Court **ORDERS** that Plaintiff's objections to the PF&R (Document 60) be **OVERRULED**. Accordingly, the Court **REAFFIRMS** its March 5, 2013 Memorandum Opinion and Order (Document 56) adopting the Magistrate Judge's Proposed Findings and Recommendation granting the Defendant's Motion to Dismiss or in the Alternative Motion for Summary Judgment (Document 14), dismissing this matter, and striking it from the docket of this Court.

The Court further **ORDERS** that all pending motions be **TERMINATED AS MOOT.**

Finally, the Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and to any unrepresented party.

ENTER:        August 20, 2013

IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA